Brian M. Bergin, #016375
**ROSE LAW GROUP pc**
6613 N. Scottsdale Road, Suite 200
Scottsdale, Arizona 85250
Tel: (480) 240-5634
Fax: (480) 951-6993
bbergin@roselawgroup.com
Attorneys for Arizona State Senator Russell Pearce

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GILA RIVER INDIAN COMMUNITY, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF THE INTERIOR; and KENNETH L. SALAZAR, in his official capacity as Secretary of the United States Department of the Interior; and LARRY ECHO HAWK, in his official capacity as the Assistant Secretary for Indian Affairs of the United States Department of the Interior,<br><br>Defendants. | No. 2:10-cv-01993-DGC<br><br><br>**MOTION SEEKING LEAVE TO INTERVENE** |
| CITY OF GLENDALE, ARIZONA<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF THE INTERIOR; KENNETH L. SALAZAR, in his official capacity as the | No. 2:10-cv-02017-DKD |

1

United States Secretary of the Interior,

                Defendants.

Arizona State Senator Russell Pearce, by and through undersigned counsel, pursuant to Rule 24 of the Federal Rules of Civil Procedure, hereby submits this Motion Seeking Leave to Intervene and Request for Expedited Consideration. This motion is made and based upon the memorandum of points and authorities that follows, the exhibits attached hereto, the oral argument of counsel presented at any hearing conducted concerning this matter and this Court's entire file maintained for this matter, judicial notice of which is requested pursuant to Rule 201 of the Federal Rules of Evidence. Based upon the arguments below, Senator Pierce respectfully requests that this Court grant him leave to intervene as a Plaintiff and file the Complaint in Intervention, a form of which is attached hereto as Exhibit "A".

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     INTRODUCTION AND BACKGROUND**

In the pending case, the Plaintiffs have requested that this Court issue a declaration invalidating, and permanently enjoining, the Defendants from enacting the United States Department of the Interior's July 23, 2010 letter decision (the "Decision") granting the Tohono O'odham Nation's (the "Nation") request that the United States accept certain land into trust, on behalf of the Nation, under the Gila Bend Indian Reservation Lands Replacement Act, Pub. L. No. 99-503, 100 Stat. 1798 (1986) ("Gila Bend Act" or "Act").

Absent action of this Court, the Decision would permit the Nation to succeed in a long-contemplated and thinly-veiled effort to subvert existing law and construct a Las Vegas-style tribal casino and gaming complex far away from the Nation's traditional reservation and directly in the middle of the City of Glendale, Arizona (the "City").

Enactment of Defendant's Decision is contrary to the text and intent of the Gila Bend Act; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.* ("IGRA"); the Nation's gaming compact with the State of Arizona, Arizona Revised Statutes ("A.R.S.") § 5-601 *et. seq.* (the "Compact"); and the United States Constitution.

Although the Nation's request at this time, on its face, only seeks to accept the land into trust, the Nation has made clear its intent to create this new reservation (entirely within the City's exterior city limits) for the purpose of developing a $600 million, 1.2 million square foot gaming center, complete with a 150,000 square foot casino, eight restaurants, and parking for 4,000 cars (the "Contemplated Development"). The Contemplated Development would exist in a largely residential section of the City -- within a quarter-mile of neighborhoods, churches, parks and a high school.

Because of the Nation's clear intent to use the Decision to facilitate its desire to create a Las Vegas-style gaming facility, any Decision that takes land into trust without performing a concurrent analysis of the relevant State and Federal legal framework applicable to tribal gaming (i.e. the IGRA and the Compact) is, by definition, arbitrary, capricious and contrary to law and must be enjoined.

The creation of the proposed new reservation also would impermissibly compromise, and effectively eliminate, the State's Constitutionally-protected power to regulate activities conducted on the property, thus muting the State's voice concerning the site's development. The Contemplated Development would have negative and far-reaching impact on Arizona's rights and its citizens' interests -- including public safety and erosion of the tax base. Further, completion of the Contemplated Development would result in direct conflict with Arizona's legislature's clear statutory intent to restrict gaming to existing reservations. *See* A.R.S. § 5-601 (C) *and* § 5-601.02 (6)(j). Enactment of the Decision would, therefore, operate an impermissible infringement on State sovereignty violative of the Tenth Amendment to the United States Constitution.

Allowing the Nation to proceed with the Contemplated Development, under the authority of the Defendants' Decision—a step that, once implemented, irrevocably will remove the land from all State and local control—will cause immediate and irreparable harm to the City, the State, the citizens, and the taxpayers of Arizona.

Proposed Intervenor/Plaintiff Russell Pearce is an Arizona State Senator, citizen, property owner, taxpayer and a well-known advocate and champion of states' rights. Senator Pearce seeks to join as a Plaintiff to this lawsuit challenging enactment of the Decision. Intervention by Senator Pearce will ensure that his interests as citizen and taxpayer, as well as his perspective as a member of the Arizona Senate, are represented and preserved in the record for consideration by this Court.

## II. THE PROPOSED INTERVENOR

Russell Pearce is an Arizona native, a resident of Maricopa County, and the State Senator for the 18th Legislative District of Arizona. Before running for public office, Russell Pearce was an officer of the Maricopa County Sheriff's Office for 23 years and rose to the rank of Chief Deputy Sheriff.

Senator Pearce has served in the State legislature since 2001. During his years in the Arizona legislature, Senator Pearce has served the people of Arizona and consistently championed states' rights issues.

He has authored numerous bills and propositions reflecting his deep commitment to taxpayers' and states' rights including Proposition 200, the "Arizona Taxpayers and Citizens Protection Act", and Arizona's "Support Our Law Enforcement and Safe Neighborhoods Act" commonly known as "SB 1070."

Senator Pearce's knowledge and experience make him uniquely positioned to present to this court a perspective not represented by the existing parties. Senator Pearce desires to offer to this Court the position of an Arizona taxpayer, legislator, and proponent of state's rights.

## III. SENATOR PEARCE MAY INTERVENE AS A MATTER OF RIGHT

Federal Rule of Civil Procedure 24(a)(2) states:

> On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a

practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit Court of Appeals has explained that one should be allowed to intervene as of right when:

> (1) the intervention must be timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject matter of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). Importantly, this test must be "broadly construed in favor of applicants for intervention." *United States ex rel. McGough v. Covington Technologies Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

### A. Senator Pearce's Intervention Effort is Timely

This matter commenced when the Gila River Indian Community filed its complaint September 16, 2010. The City filed its Complaint on September 21, 2010 and the cases were consolidated on October 1, 2010. This motion is submitted just less than one month after the case began and in advance of the Defendants' answer or other responsive pleading. *See Prete*, 438 F.3d at 954 (motion to intervene filed shortly after plaintiff brought action was timely); *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (a filing for intervention that occurs before the case is truly at issue is considered timely). There are no existing hearing deadlines in place and Senator Pearce's intervention, by filing the proposed Complaint in Intervention, will not unnecessarily delay any scheduled proceedings.

### B. Senator Pearce Has a Direct and Protectable Interest That Relates To This Lawsuit.

In order to intervene in a lawsuit, the applicant must have a "protectable interest" in the lawsuit. *See Prete*, 438 F.3d at 954. Senator Pearce, as an Arizona legislator and citizen, has a protectable interest in articulating the unique perspective of the legislative branch of the State of Arizona, defending Arizona's statutory scheme relating to gaming—which he supports and has a special relationship—and defending the states' rights issues threatened by the Decision.

Courts have held that a state legislature has a protectable interest in articulating to the Court the unique perspective of the legislative branch of a particular state's government and to defend a states statutory scheme. *See Powell v. Ridge*, 247 F.3d 520, 522 (3rd Cir. 2001) (granting leaders of the legislature motion to intervene as defendants to "articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government."); *Karcher v. May*, 479 U.S. 72, 82 (1987) (legislators could intervene to defend an act passed by the New Jersey legislature); *Coleman v. Miller*, 307 U.S. 433, 438 (1939); *Yniguez v. State of Arizona*, 939 F.2d 727, 732 (9th Cir. 1991) ("[T]he Supreme Court held that state legislators who intervened in their official capacities to defend a lawsuit challenging the constitutionality of a statute" only lacked standing after they left office); *Flores v. State of Arizona*, Case No. CV-92-596-TUC-RCC (D. Ariz.) (Order of March 15, 2006 (Dkt. Entry No. 390)) (granting legislators' motion for permissive intervention); *Clairton Sportsmen's Club v. Pennsylvania Turnpike Comm.*, 882 F. Supp. 455, 462-463 (W.D. Pa. 1995) (permitting intervention of state legislators to submit briefs and make arguments concerning

7

the decision to build a highway system); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding that a public interest group that merely supported a ballot initiative has a "significant protectable interest" in defending legality of the measure).

Here, Senator Pearce has a significant protectable interest in defending Arizona's rights, its statutory scheme relating to gaming, and to articulate the unique perspective of Arizona's legislative branch relating to these issues. As explained above, and in the attached proposed Complaint in Intervention, the Arizona legislature has expressed clear statutory intent to restrict gaming to existing reservations. *See* A.R.S. § 5-601 (C) *and* § 5-601.02 (6)(j). That intent would be eroded and upended if the Decision is allowed to be enforced.

Therefore, based on the long-standing Supreme Court precedent as well as the precedent of this circuit, Senator Pearce has a right to intervene as a Plaintiff on account of his role as a Senator knowledgeable of the Arizona Legislature's actions and desires.

C. The Disposition in This Case Will Directly Affect Senator Pearce.

In addition to the significant and protectable interests discussed above, enactment of the Decision will directly affect Senator Pearce, as a State Senator, together with his interests as a State of Arizona and Maricopa County resident and taxpayer. *See Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) ("[a] question of impairment is not separate from the question of existence of an interest.").

As a citizen and taxpayer of Arizona, Senator Pearce will be harmed by the Secretary's Decision because the Subject Property irrevocably will be removed from

State and Local land use control and significantly, and adversely, will impact the tax base of the State. Senator Pearce will be subject to higher taxes or lower service levels because of the Decision and will be impacted by the deleterious effects of additional gaming in the State.

Further, as a State Senator representing the people of Arizona, Senator Pearce has a unique duty to ensure that the interests of the people of Arizona are protected. As part of the State's gaming Compact with the Tribe, the people of Arizona enacted proposition 202, part of which sought to limit tribal gaming to existing reservations. *See* A.R.S. § 5-601 (C). In fact, the Nation backed that particular proposition seeking support from the voters under the auspices that off-reservation gaming would not be possible. The Nation's current request is an end run attempt to subvert the will of the people and, as an elected representative; Senator Pearce must make all efforts to prevent that outcome. In short, if the Nation's request is approved, Senator Pearce will have violated the voters' trust, leading to irreparable and real harm to his reputation and ability to represent his constituents and the people of Arizona.

### D. Adequacy of Representation

The movant's burden under this prong has been described as "minimal," as a party seeking to intervene needs to show only that representation of his interest "may be inadequate."

*Natural Resources Defense Council*, 578 F.2d at 1345; *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972). As the Sixth Circuit has held:

> [T]he applicant [for intervention] should be treated as the best

9

> judge of whether the existing parties adequately represent his or her interests, and that any doubt regarding adequacy of representation should be resolved in favor or the proposed intervenors.

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 482 (6th Cir. 2000).

In this case, Senator Pearce is concerned that the existing Plaintiffs may not adequately represent his interests, both as a member of the legislature, and as one particularly concerned with protecting state interests.

The City of Glendale and the Gila River Indian Community will undoubtedly voice their unique and individual concerns. Senator Pearce seeks to ensure, through his participation, that the case will be prosecuted consistent with the views of the legislature and consistent with a desire to protect the interests of the State of Arizona.

As explained above, Senator Pearce is deeply concerned about the Decision's potential impact on Arizona's interests in maintaining oversight of gaming activities and assuring that its Tenth Amendment rights remain intact.[1]

**V. Permissive Intervention Should Be Granted.**

Even if one suggests Senator Pearce cannot intervene as of right, as explained above, his interests are such that he clearly is one who may be permitted to intervene. Rule 24(b)(1) of the Arizona Rules of Civil Procedure governs permissive intervention and provides:

> On timely motion, the Court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the

---

[1] At this stage, the State of Arizona has not expressed a desire to intervene in this case. It is important to note that the positions Senator Pearce seeks to represent are entirely consistent with those expressed by the Governor in her September 24, 2010 correspondence to Secretary Salazar attached hereto as Exhibit "B".

main action a common question of law or fact.

This test is met here. As shown above, Senator Pearce, from his unique position as State Senator, has a perspective to offer to this case that shares both common questions of law and fact, albeit with a perspective different from those already joined to this action. The Court will need to examine the same law and the same facts to adjudicate these claims.

Rule 24(b)(3) requires the Court to consider whether permissive intervention would cause undue delay or prejudice the adjudication of the rights of the existing parties. In this instance, as described above, Senator Pearce's early intervention will neither prejudice nor delay the proceedings.

Consequently, at a minimum, Senator Pearce should be granted permissive intervention.

RESPECTFULLY SUBMITTED this 6th day of October, 2010.

        **ROSE LAW GROUP PC**

        */s/Brian M. Bergin*
        Brian M. Bergin
        6613 N. Scottsdale Rd, Ste 200
        Scottsdale, Arizona 85032
        Proposed Counsel to Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

/s/ Jennifer Alvarez