Brian M. Bergin, #016375
**ROSE LAW GROUP pc**
6613 N. Scottsdale Road, Suite 200
Scottsdale, Arizona  85250
Tel: (480) 240-5634
Fax: (480) 951-6993
bbergin@roselawgroup.com
Attorneys for Scott Bundgaard

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| GILA RIVER INDIAN COMMUNITY, a federally recognized Indian tribe, | No.  2:10-cv-01993-DGC |
| Plaintiff, | |
| vs. | **MOTION SEEKING LEAVE TO INTERVENE** |
| THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF THE INTERIOR; and KENNETH L. SALAZAR, in his official capacity as Secretary of the United States Department of the Interior; and LARRY ECHO HAWK, in his official capacity as the Assistant Secretary for Indian Affairs of the United States Department of the Interior, | |
| Defendants. | |
| CITY OF GLENDALE, ARIZONA, | No. 2:10-cv-02017-DKD |
| Plaintiff/Intervenor, | |
| vs. | |
| THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF THE INTERIOR; KENNETH L. SALAZAR, in his official capacity as the | |

1

United States Secretary of the Interior,

Defendants.

Plaintiff, Scott Bundgaard, by and through undersigned counsel, pursuant to Rule 24 of the Federal Rules of Civil Procedure, hereby submits this Motion Seeking Leave to Intervene. This motion is made and based upon the memorandum of points and authorities that follows, the exhibits attached hereto, the oral argument of counsel presented at any hearing conducted concerning this matter and this Court's entire file maintained for this matter, judicial notice of which is requested pursuant to Rule 201 of the Federal Rules of Evidence. Based upon the arguments below, Mr. Bundgaard respectfully requests that this Court grant him leave to intervene as a Plaintiff and file the Complaint in Intervention, a form of which is attached hereto as Exhibit "A".

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.   INTRODUCTION AND BACKGROUND**

In the pending case, the Plaintiffs have requested that this Court issue a declaration invalidating, and permanently enjoining, the Defendants from enacting the United States Department of the Interior's July 23, 2010 letter decision (the "Decision") granting the Tohono O'odham Nation's (the "Nation") request that the United States accept certain land into trust, on behalf of the Nation, under the Gila Bend Indian Reservation Lands Replacement Act, Pub. L. No. 99-503, 100 Stat. 1798 (1986) ("Gila Bend Act" or "Act").

Absent action of this Court, the Decision would permit the Nation to succeed in a long-contemplated and thinly-veiled effort to subvert existing law and construct a Las

Vegas-style tribal casino and gaming complex far away from the Nation's traditional reservation and directly in the middle of the City of Glendale, Arizona (the "City").

Enactment of Defendant's Decision is contrary to the text and intent of the Gila Bend Act; the Administrative Procedure Act, 5 U.S.C. §§ 701-706; the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.* ("IGRA"); the Nation's gaming compact with the State of Arizona, Arizona Revised Statutes ("A.R.S.") § 5-601 *et. seq.* (the "Compact"); and the United States Constitution.

Although the Nation's request at this time, on its face, only seeks to accept the land into trust, the Nation has made clear its intent to create this new reservation (entirely within the City's exterior city limits) for the purpose of developing a $600 million, 1.2 million square foot gaming center, complete with a 150,000 square foot casino, eight restaurants, and parking for 4,000 cars (the "Contemplated Development"). The Contemplated Development would exist in a largely residential section of the City -- within a quarter-mile of neighborhoods, churches, parks and a high school.

Because of the Nation's clear intent to use the Decision to facilitate its desire to create a Las Vegas-style gaming facility, any Decision that takes land into trust without performing a concurrent analysis of the relevant State and Federal legal framework applicable to tribal gaming (i.e. the IGRA and the Compact) is, by definition, arbitrary, capricious and contrary to law and must be enjoined.

The Contemplated Development would have negative and far-reaching impact on Arizona's rights and its citizens' (including Mr. Bundgaard's) interests -- including public safety and erosion of the tax base. Further, completion of the Contemplated

3

Development would result in direct conflict with the Arizona legislature's clear statutory intent to restrict gaming to existing reservations. *See* A.R.S. § 5-601 (C) *and* § 5-601.02 (6)(j).

Allowing the Nation to proceed with the Contemplated Development, under the authority of the Defendants' Decision—a step that, once implemented, irrevocably will remove the land from all State and local control—will cause immediate and irreparable harm to Mr. Bundgaard, the City, the State, the citizens, and the taxpayers of Arizona.

Proposed Intervenor/Plaintiff Scott Bundgaard is a Peoria property owner and taxpayer. He also a has the unique distinction of serving eight years in the Arizona State legislature, having been elected both to the Arizona Senate (where he served as Chairman of the Finance Committee) and the Arizona House of Representatives. Mr. Bundgaard seeks to join as a Plaintiff to this lawsuit challenging enactment of the Decision. Intervention by Mr. Bundgaard will ensure that his interests as property owner and taxpayer, as well as his perspective gained during his time in the Arizona Legislature, are represented and preserved in the record for consideration by this Court.

## II.   THE PROPOSED INTERVENOR

Scott Bundgaard was raised and educated in Arizona, is a Peoria property owner and taxpayer and was a member of the Arizona legislature for eight years, having served in both legislative bodies.

During his years in the Arizona legislature, Mr. Bundgaard served the constituents who stand to be adversely affected by the Proposed Development and consistently advocated taxpayers' rights. Moreover, Mr. Bundgaard served in the Arizona Senate in

4

2002, when the Arizona legislature rejected S.B. 1001, thus precipitating Proposition 202, which, in part, sought to limit gaming to existing reservation lands. *See* A.R.S. § 5-601 (C).

Mr. Bundgaard's interest, knowledge and experience make him uniquely positioned to present to this Court a perspective not represented by the existing parties. He desires to offer to this Court the position of a Peoria property owner and taxpayer, former legislator, and proponent of taxpayer's rights.

### III.  MR. BUNDGAARD MAY INTERVENE AS A MATTER OF RIGHT

Federal Rule of Civil Procedure 24(a)(2) states:

> On timely motion, the court must permit anyone to intervene who:
>
> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit Court of Appeals has explained that one should be allowed to intervene as of right when:

> (1) the intervention must be timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject matter of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

5

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).  Importantly, this test must be "broadly construed in favor of applicants for intervention."  *United States ex rel. McGough v. Covington Technologies Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

### A. Mr. Bundgaard's Intervention Effort is Timely

This matter commenced when the Gila River Indian Community filed its complaint September 16, 2010.  The City filed its Complaint on September 21, 2010 and the cases were consolidated on October 1, 2010.   This motion is submitted just less than one month after the case began and before any dispositive issues have been raised or resolved.  *See Prete*, 438 F.3d at 954 (motion to intervene filed shortly after plaintiff brought action was timely); *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (a filing for intervention that occurs before the case is truly at issue is considered timely).  Mr. Bundgaard is aware of this Court's recently-established scheduling order and agrees to abide by the existing schedule.

### B. Mr. Bundgaard Has a Direct and Protectable Interest That Relates To This Lawsuit.

In order to intervene in a lawsuit, the applicant must have a "protectable interest" in the lawsuit.  *See Prete*, 438 F.3d at 954.  Mr. Bundgaard, as a Peoria property owner, taxpayer, and former Arizona legislator, has a protectable interest and should be allowed to intervene and articulate his unique perspective.

Courts have recognized circumstances under which citizens may intervene in litigation to voice their concerns as taxpayers and to seek to protect against injury to other interests, including injury to property rights and interests.  See e.g. *Flast v. Cohen*, 392 U.S.

83 (1968)(protecting taxpayers' interests); *Bowen v. Kendrick*, 487 U.S. 589 (1988)(allowing taxpayer standing); *Southwest Center for Biological Diversity*, 268 F.3d 810 (9th Cir. 2001)(allowing intervention to preserve "protectable interests"). In this matter, as a Peoria property owner, Mr. Bundgaard faces injury because the Contemplated Development would have negative and far-reaching impact on public safety and would result in erosion of the tax base. He also will be subject to higher taxes or lower service levels because of the Decision and will be impacted by the deleterious effects of additional gaming in the State. Those interests, alone, are sufficient to justify intervention. See *Southwest Center*, 268 F.3d at 818 ("In general, we construe Rule 24(a) liberally in favor of potential intervenors.")

In addition to the foregoing, Mr. Bundgaard's experience as an Arizona legislator also weighs in favor of intervention. Courts have held that a state legislature has a protectable interest in articulating to the Court the unique perspective of the legislative branch of a particular state's government and to defend a states statutory scheme. *See Powell v. Ridge*, 247 F.3d 520, 522 (3rd Cir. 2001) (granting leaders of the legislature motion to intervene as defendants to "articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government."); *Karcher v. May*, 479 U.S. 72, 82 (1987) (legislators could intervene to defend an act passed by the New Jersey legislature); *Coleman v. Miller*, 307 U.S. 433, 438 (1939); *Yniguez v. State of Arizona*, 939 F.2d 727, 732 (9th Cir. 1991) ("[T]he Supreme Court held that state legislators who intervened in their official capacities to defend a lawsuit challenging the constitutionality of a statute" only lacked standing after they left office); *Flores v. State of Arizona*, Case No. CV-92-596-

TUC-RCC (D. Ariz.) (Order of March 15, 2006 (Dkt. Entry No. 390)) (granting legislators' motion for permissive intervention); *Clairton Sportsmen's Club v. Pennsylvania Turnpike Comm.*, 882 F. Supp. 455, 462-463 (W.D. Pa. 1995) (permitting intervention of state legislators to submit briefs and make arguments concerning the decision to build a highway system); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding that a public interest group that merely supported a ballot initiative has a "significant protectable interest" in defending legality of the measure).

Therefore, based on the long-standing Supreme Court precedent as well as the precedent of this circuit, Mr. Bundgaard has a right to intervene as a Plaintiff on account of his unique interests as a Peoria property owner and taxpayer. Moreover, his perspective as a former legislator knowledgeable of the Arizona Legislature's actions and desires make him particularly valuable as a Plaintiff.

C. The Disposition in This Case Will Directly Affect Mr. Bundgaard.

In addition to the significant and protectable interests discussed above, enactment of the Decision will directly affect Mr. Bundgaard, as a State of Arizona and Maricopa County resident, Peoria property owner and taxpayer. *See Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) ("[a] question of impairment is not separate from the question of existence of an interest.").

As a citizen, property owner and taxpayer, Mr. Bundgaard will be harmed by the Secretary's Decision because the Subject Property irrevocably will be removed from State and local land use control and significantly, and adversely, will impact the local tax base. He also will be subject to higher taxes or lower service levels because of the

Decision and will be impacted by the deleterious effects of additional gaming in the State.

### D. Adequacy of Representation

The movant's burden under this prong has been described as "minimal," as a party seeking to intervene needs to show only that representation of his interest "may be inadequate."

*Natural Resources Defense Council*, 578 F.2d at 1345; *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972). As the Sixth Circuit has held:

> [T]he applicant [for intervention] should be treated as the best judge of whether the existing parties adequately represent his or her interests, and that any doubt regarding adequacy of representation should be resolved in favor or the proposed intervenors.

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 482 (6th Cir. 2000).

In this case, Mr. Bundgaard is concerned that the existing Plaintiffs may not adequately represent his interests as property owner, taxpayer and former legislator.

The City of Glendale and the Gila River Indian Community will undoubtedly voice their unique and individual concerns. Mr. Bundgaard seeks to ensure, through his participation, that the case will be prosecuted in harmony with the views of Peoria property owners, taxpayers and consistent with the intent of Proposition 202, which, in part, sought to limit gaming to existing reservation lands. *See* A.R.S. § 5-601 (C).

### IV. PERMISSIVE INTERVENTION SHOULD BE GRANTED.

Even if one suggests Mr. Bundgaard cannot intervene as of right, as explained above, his interests are such that he clearly is one who may be permitted to intervene. Rule

9

24(b)(1) of the Arizona Rules of Civil Procedure governs permissive intervention and provides:

> On timely motion, the Court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

This test is met here. As shown above, Mr. Bundgaard, from his unique position, has a perspective to offer to this case that shares both common questions of law and fact, albeit with a perspective different from those already joined to this action. The Court will need to examine the same law and the same facts to adjudicate these claims.

Rule 24(b)(3) requires the Court to consider whether permissive intervention would cause undue delay or prejudice the adjudication of the rights of the existing parties. In this instance, as described above, Mr. Bundgaard's early intervention will neither prejudice nor delay the proceedings and, if allowed to intervene, will abide by this Court's existing deadlines.

Consequently, at a minimum, Mr. Bundgaard should be granted permissive intervention.

RESPECTFULLY SUBMITTED this 18th day of October, 2010.

**ROSE LAW GROUP PC**

*/s/Brian M. Bergin*
Brian M. Bergin
6613 N. Scottsdale Rd, Ste 200
Scottsdale, Arizona 85032
Proposed Counsel to Scott Bundgaard

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

/s/ Jennifer Alvarez