**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gila River Indian Community, a federally recognized Indian Tribe, | No. CV10-1993 PHX-DGC<br>CV10-2017 PHX DKD<br>CV10-2138 PHX MHB |
| Plaintiff, | (Consolidated) |
| vs. | **ORDER** |
| United States of America, | |
| Defendant. | |

Arizona State Senator Russell Pearce seeks leave to intervene in this consolidated action. Doc. 24. Defendant United States of America and Intervenor Tohono O'Odham Nation ("the Nation") oppose his request. Docs. 32, 33. The motion has been fully briefed. Docs. 24, 32, 33, 44. No party has requested oral argument. For reasons that follow, the Court will deny the motion, but will permit Senator Pearce to file an amicus brief on a limited issue and on the schedule set below.

**I.  Background.**

On July 23, 2010, the Department of the Interior ("DOI") decided to accept a 54-acre parcel of land in trust for the benefit of the Nation. Doc. 32 at 3. Three separate groups of plaintiffs filed individual actions in federal court opposing the DOI's decision, and the cases have been consolidated in the present action. Plaintiff Gila River Indian Community alleges that the DOI decision was an abuse of discretion for two reasons: (1) the DOI violated the Indian Gaming Regulatory Act by failing to assess whether the parcel was suitable for gaming before deciding to accept the parcel in trust; and (2) the DOI acted contrary to the

Gila Bend Act and failed to consider whether a water management plan can be established. Doc. 1. Plaintiff City of Glendale alleges that the DOI decision was an abuse of discretion for the same reasons, and also that the taking of the land into trust violates the Tenth Amendment to the United States Constitution. Case 2:10-CV-02017-DGC, Doc. 1. The third group of plaintiffs makes claims similar to those raised by the Gila River Indian Community. Case 2:10-CV-02138-DGC, Doc. 1.

Senator Pearce moves to intervene as a plaintiff. Doc. 24. He seeks both intervention as a matter of right and permissive intervention.

## II.   Intervention as of Right.

To qualify for intervention as a matter of right under Federal Rule of Civil Procedure 24(a), a proposed intervenor must (1) have a significant protectable interest in the property or transaction that is the subject of the litigation, (2) be situated so that the disposition of the litigation may impair the proposed intervenor's ability to protect that interest, (3) demonstrate that his interests are not adequately represented by other parties, and (4) move to intervene in a timely manner. *Arakaki V. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). "Failure to satisfy any one of the requirements is fatal to the application, and [a court] need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Senator Pearce asserts three protectable interests in this litigation: (1) "articulating the unique perspective" of Arizona's legislative branch; (2) "defending Arizona's statutory scheme relating to gaming"; and (3) "defending the states' rights issues threatened by the Decision." Doc. 24 at 7. The Senator's brief later identifies A.R.S. § 5-601 *et. seq.* as the statutory scheme and the Tenth Amendment as the states' right at issue. Doc. 24 at 3, 4.

The Court concludes that the cases cited in the motion to intervene do not establish a significantly protectable interest for the Senator under the facts of this case. Because the motion fails to establish a protected interest, the Court need not reach the remaining requirements of Rule 24(a). *Perry*, 587 F.3d at 950.

### A.   Supreme Court Cases.

Senator Pearce cites *Karcher v. May*, 484 U.S. 72 (1987), a case that involved the interest of a state legislature in defending a state statute against a claim of unconstitutionality when "neither the Attorney General nor the named defendants would defend the statute." *Id.* at 75. The Supreme Court held that the legislative intervenors lacked standing after "lo[sing] their official status as presiding legislative officers," but recognized that intervention had been proper in the first instance. *Id.* at 75, 76. The intervenors were the speaker of the state assembly and president of the state senate. *Id.* In describing the procedural posture of the case, the Supreme Court deemed the intervenors as representing the "incumbent legislature, on behalf of the State, and not the particular legislative body that enacted the [challenged] law." *Id.* at 81. The Supreme Court also noted that "the New Jersey Legislature had authority under state law to represent the State's interests in both the District Court and the Court of Appeals." *Id.* at 82.

Senator Pearce seeks to intervene only as a "member of the Arizona Senate." Doc. 24. He does not claim to be a presiding legislative officer like the intervenors in *Karcher*, nor that he is authorized to represent the State of Arizona in this case. *Karcher*, therefore, is inapposite.[1]

The second Supreme Court case cited in the motion to intervene, *Coleman v. Miller*, 307 U.S. 433 (1939), is also inapposite. In *Coleman*, the vote of the Kansas Senate was evenly divided on a proposed amendment to the United States Constitution. *Id.* at 435-36. With a tie vote, the amendment would not have been ratified. *See id.* at 436. When the Lieutenant Governor purported to break the tie and cast the deciding vote in favor of

---

[1] Senator Pearce argues in his reply brief that in *Forty-Seventh Legislature of Arizona v. Napolitano*, 143 P.3d 1023 (2006), the Arizona Supreme Court recognized a legislator's standing to challenge the governor's line-item veto of a portion of a bill. Doc. 44 at 4. This argument fails for two reasons. First, arguments made for the first time in a reply brief are untimely. *See, e.g.*, *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008). Second, Senator Pearce concedes that, unlike the legislators in *Forty-Seventh Legislature of Arizona*, he does not have the legislature's consent to act as its representative in this case.

- 3 -

1 ratification, twenty one senators – including the twenty who voted against ratification – 2 brought suit in state court. *Id.* at 438. The Supreme Court ultimately held that the twenty 3 senators who voted against ratification had a sufficient interest to bring suit to have their 4 votes given effect. *See id.*

5 Subsequent decisions have limited the holding of *Coleman*. As the Supreme Court 6 has explained: "our holding in *Coleman* stands (at most) for the proposition that legislators 7 whose votes would have been sufficient to defeat (or enact) a specific legislative act have 8 standing to sue if that legislative action goes into effect (or does not go into effect), on the 9 ground that their votes have been completely nullified." *Raines v. Byrd*, 521 U.S. 811, 823 10 (1997) (citation omitted). Unlike *Coleman*, this litigation does not concern the validity of 11 an Arizona legislative act or the votes of Arizona legislators; it concerns to the validity of 12 DOI's decision to accept land in trust for the benefit of the Nation. The limited holding in 13 *Coleman* does not support the Senator's claim of a protectable interest in this case.

14 **B.    Ninth Circuit Cases.**

15 The two Ninth Circuit cases cited in the motion to intervene offer no additional 16 support. In *Yniguez v. State of Arizona*, 939 F.2d 727 (9th Cir. 1991), the Ninth Circuit 17 permitted intervention by official sponsors of a ballot initiative who vigorously campaigned 18 for passage of a constitutional amendment. When the amendment's constitutionality was 19 challenged in court, the sponsors were deemed to be in the same capacity as the legislators 20 in *Karcher* – they had cast votes for a specific piece of legislation that was at risk of being 21 invalidated. *Id.* at 732-33.

22 In *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983), a non-profit group 23 challenged the Secretary of the Interior's actions establishing a wildlife preserve. *Id.* at 526. 24 The Audubon Society, a public interest organization devoted to the protection of birds and 25 other animals and their habitats, was allowed to intervene as a defendant. *Id.* at 526-27. The 26 Ninth Circuit found that the Society had a protectable interest because "[a]n adverse decision 27 would impair [its] interest in the preservation of birds and their habitats." *Id.* at 528. The 28 Society – much like the sponsors in *Yniguez* – had "participated actively in the administrative

process" leading to the Secretary's decision. *Id.* at 526-27.

Senator Pearce is not like the intervenors in either case. He does not assert that legislation which he sponsored or for which he voted is being challenged in this litigation, as in *Yniguez*. Nor does he claim to have actively participated in the administrative process leading to the DOI decision, as in *Sagebrush Rebellion*. Senator Pearce thus has not shown the same kind of protectable interest the Ninth Circuit found in those cases. While the Senator does argue that he will be adversely affected by "higher taxes or lower service levels" if the DOI's decision is implemented (Doc. 24 at 9), he has made no showing of the extent of this alleged injury, and the significance of such injury is not apparent to the Court. It seems unlikely that a resident of Mesa will experience higher taxes or lower services because 54 acres of land within the boundaries of Glendale become reservation land.

### C. Other Cases.

The motion to intervene cites two additional cases from other jurisdictions. In *Powell v. Ridge*, 247 F.3d 520 (3rd Cir. 2001), the issue on appeal was not whether intervention was proper, but whether the intervening legislators had immunity from discovery. Moreover, the motion to intervene had been unopposed in the district court, and the appellate decision did not analyze the basis for intervention. The case did note that the legislators had cited "financial and legal interests in the litigation and the need to 'articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government,'" *id.* at 522-23, but it did not address whether this interest would be sufficient if intervention were opposed. The decision in *Clairton Sportsmen's Club v. Pennsylvania Turnpike Comm.*, 882 F. Supp. 455, 462-463 (W.D. Pa. 1995), contains no analysis of intervention, and mentions only that six state legislators and a congressman intervened.[2]

---

[2] Senator Pearce cites *Flores v. Arizona*, Case No. CV-92-596-TUC-RCC (D. Ariz.) (Order of March 15, 2006 (Doc. 390)), but that order addressed permissive intervention, the motion was not opposed, and the intervenors were the Speaker of the House and President of the Senate. Case No. CV-92-596-TUC-RCC, Docs. 382, 384, 386, 388, 390.

- 5 -

## III. Permissive Intervention.

Senator Pearce's motion addresses permissive intervention only briefly. A court may grant permissive intervention under Rule 24(b)(1)(B) where the proposed intervenor shows (1) independent grounds for jurisdiction, (2) that the motion is timely, and (3) that the applicant's claim or defense, and the main action, have a question of law or fact in common. *Perry*, 587 F.3d at 955. The inquiry under the first element concerns subject matter jurisdiction: "[a] party seeking permissive intervention . . . must establish a basis for federal subject matter jurisdiction independent of the court's jurisdiction over the underlying action." *EEOC v. Nevada Resort Assoc.*, 792 F.2d 882, 886 (9th Cir. 1986). The motion to intervene does not address this requirement. It argues that the Senator will bring a unique perspective to this case and disputes the DOI's assertion that Senator Pearce must show Article III standing, but it does not otherwise explain an independent basis for federal subject matter jurisdiction.[3]

Even if it could be said that Senator Pearce's proposed complaint provides an independent basis for subject matter jurisdiction, permissive intervention lies within the sound discretion of the Court. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002); *Venegas v. Skaggs*, 867 F.2d 529, 530 (9th Cir. 1989). The Court may consider the nature and extent of his interests, whether those interests are adequately represented by other parties, and whether intervention will unduly delay the litigation or prejudice the original parties' rights. *Perry*, 587 F.3d at 955.

Exercising its discretion, the Court will deny Senator Pearce's request for permissive intervention. As noted above, Senator Pearce does not speak for the State of Arizona or the Arizona legislature as a whole. The existing parties have ample incentive and more than

---

[3] DOI argues that Article III standing is required for permissive intervention. The circuits are split on this issue. *See Dillard v. Chilton County Comm'n*, 495 F.3d 1324, 1337 n.10 (9th Cir. 2007). Although the opinion is not entirely clear, it appears the Ninth Circuit has concluded that standing is not required. *See Yniguez v. State of Arizona*, 939 F.3d 727, 731 (9th Cir. 1981).

sufficient resources to litigate the legality of DOI's decision fully.  In the interest of judicial economy and a prompt resolution of this case, the Court concludes that permissive intervention should be denied.  However, because none of the parties argues, as does Senator Pearce, that the DOI decision runs afoul of the Arizona statutory scheme regarding gaming, A.R.S. § 5-601 *et. seq.*, the Court will permit Senator Pearce to address this issue in an amicus brief and will require a response from Defendants.[4]

**IT IS ORDERED:**

1. The motion to intervene (Doc. 24) is **denied**.

2. Senator Pearce may, by **November 16, 2010**, file an amicus brief setting forth his views with respect to the Arizona statutory scheme regarding gaming, A.R.S. § 5-601 *et. seq*.  Defendants shall file a response to the amicus brief by **December 3, 2010**.  Senator Pearce may file a reply by **December 17, 2010**.  The amicus brief and response shall not exceed 10 pages in length, and the reply shall not exceed 5 pages in length.

DATED this 28th day of October, 2010.

_____
David G. Campbell
United States District Judge

---

[4] The motion suggests that the Court should stay this litigation until the Arizona legislature returns to session and can designate Senator Pearce as its representative.  The Court will not stay the case for an indeterminate period of time to await such an event.