Jonathan Jantzen, Attorney General, SBN 016220
Samuel Daughety, Assistant Attorney General, SBN 023170
Office of Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ  85634
Telephone: (520) 383-3410
jonathan.jantzen@tonation-nsn.gov
samuel.daughety@tonation-nsn.gov

Seth P. Waxman (*Pro hac vice*)
Danielle Spinelli (*Pro hac vice*)
Brian H. Fletcher (*Pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
seth.waxman@wilmerhale.com
danielle.spinelli@wilmerhale.com
brian.fletcher@wilmerhale.com

*Counsel for Defendant-Intervenor Tohono O'odham Nation*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| GILA RIVER INDIAN COMMUNITY,<br><br>        Plaintiff,<br><br>   vs.<br><br>THE UNITED STATES OF AMERICA; THE UNITED STATES DEPARTMENT OF THE INTERIOR; KENNETH L. SALAZAR, in his official capacity as United States Secretary of the Interior; and LARRY ECHO HAWK, in his official capacity as the Assistant Secretary for Indian Affairs of the United States Department of the Interior,<br><br>        Defendants,<br><br>   and<br><br>THE TOHONO O'ODHAM NATION,<br><br>        Defendant-Intervenor. | Case No.  2:10-cv-1993-DGC<br>            2:10-cv-2017-DGC<br>            2:10-cv-2138-DGC<br><br>(Consolidated)<br><br>**THE TOHONO O'ODHAM NATION'S STATEMENT OF FACTS IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFFS' UNIFIED STATEMENT OF FACTS** |

Pursuant to Local Rule of Civil Procedure 56.1, Defendant-Intervenor the Tohono O'odham Nation (the "Nation") hereby sets forth the material facts supporting its cross-motion for summary judgment and responds to Plaintiffs' Unified Statement of Facts in support of their motions for summary judgment.

As a preliminary matter, because Plaintiffs seek review of a final agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), this case by definition cannot present any disputed issues of material fact to be resolved by this Court. Instead, the case raises only questions of law that must be resolved based on the administrative record submitted by the government.[1] "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). An APA case is "a legal one … whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment." *University Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999); *see also, e.g.*, *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) ("The entire case on review is a question of law, and only a question of law."). Accordingly, "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co v. Lorion*, 470 U.S. 729, 743-744 (1985) (citations and internal quotation marks omitted); *see also, e.g.*, *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) ("Judicial

---

[1] Plaintiffs' claims that the Gila Bend Indian Reservation Lands Replacement Act, Pub. L. No. 99-503, 100 Stat. 1798 (1986) (the "Lands Replacement Act" or the "Act"), exceeds Congress's power under the Indian Commerce Clause and violates the Tenth Amendment are likewise pure questions of law that can and should be resolved without consideration of extra-record materials. *See Plaquemines Port, Harbor & Terminal Dist. v. Federal Maritime Comm'n*, 838 F.2d 536, 551 (D.C. Cir. 1988) ("This court may reach constitutional issues not reached by the agency. We must rely, however, on the factual record transmitted to us by the agency.").

review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court.").[2]

## MATERIAL FACTS IN SUPPORT OF THE NATION'S CROSS-MOTION FOR SUMMARY JUDGMENT

This action challenges the Secretary of the Interior's decision to hold certain land, referred to as "Parcel 2," in trust for the benefit of the Nation pursuant to the Gila Bend Indian Reservation Lands Replacement Act, Pub. L. No. 99-503, 100 Stat. 1798 (1986) (the "Lands Replacement Act" or the "Act"). The Lands Replacement Act provides in relevant part:

> The Secretary, at the request of the [Nation], shall hold in trust for the benefit of the [Nation] any land which [1] the [Nation] acquires pursuant to subsection (c) which meets the requirements of this subsection. … Land does not meet the requirements of this subsection if it is [2] outside the counties of Maricopa, Pinal, and Pima, Arizona, or [3] within the corporate limits of any city or town. Land meets the requirements of this subsection only if it [4] constitutes not more than three separate areas consisting of contiguous tracts, [5] at least one of which areas shall be contiguous to San Lucy Village. The Secretary may waive the requirements set forth in the preceding sentence if he determines that additional areas are appropriate.

Pub. L. No. 99-503, § 6(d). Subsection (c) of the Act, in turn, authorizes the Nation to "acquire by purchase private lands in an amount not to exceed, in the aggregate, nine

---

[2] Review of agency action under the APA may look "beyond the record" only "if necessary to explain agency decisions." *Southwest Ctr. for Biological Diversity*, 100 F.3d at 1450. Accordingly, the Ninth Circuit has "only allowed extra-record materials: (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) when the agency has relied on documents not in the record, or (3) when supplementing the record is necessary to explain technical terms or complex subject matter." *Id.* (internal quotation marks omitted). "These limited exceptions operate to identify and plug holes in the administrative record [and] are narrowly construed and applied." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). None of them is applicable in this case, in which the Secretary of the Interior's written decision and the documents in the administrative record on which the decision relies fully set forth the factors considered by the agency and the reasons for its determination.

thousand eight hundred and eighty acres." *Id.* § 6(c). Accordingly, the material facts supporting the Nation's cross-motion for summary judgment are as follows:

1. Parcel 2 is a parcel of approximately 54 acres that is part of a property that the Nation acquired by purchasing the land from a private owner. AR3; AR4350-4353; AR4366. If Parcel 2 is taken into trust, the total amount of land taken into trust pursuant to the Lands Replacement Act will be approximately 3,254 acres. AR3; AR9.

2. Parcel 2 is located in Maricopa County, Arizona. AR7.

3. Parcel 2 is not within the incorporated territory of any city. It is part of a "county island" surrounded on all sides by territory that has been annexed by the City of Glendale, but Glendale has never annexed or purported to annex Parcel 2. AR7.

4. Parcel 2 consists of contiguous tracts. AR4350-4353. If acquired in trust, it would be only the second property to be acquired pursuant to the Lands Replacement Act. AR9. The only other acquisition under the Act, San Lucy Farms, consists of a 3,200-acre area of contiguous tracts that was acquired into trust in 2004. AR9.

## RESPONSE TO PLAINTIFFS' UNIFIED STATEMENT OF FACTS

In their unified statement of facts, Plaintiffs proffer many purported facts unsupported by the administrative record. Because, as noted above, this APA challenge to the Secretary of the Interior's decision by definition turns solely on the facts contained in the administrative record, such extra-record allegations are immaterial and improper. In particular, the Nation objects to Plaintiffs' reliance on Exhibit 3(A) to their unified statement of facts and joins the United States' motion to strike Exhibit 3(A) for the reasons laid out in that motion (Dkt. No. 94). Many additional purported facts are supported only by citation to Plaintiffs' own legal submissions to the Secretary. Where appropriate, however, the Nation has not disputed such purported facts solely for the purpose of resolving these cross-motions for summary judgment. The Nation reserves all rights to dispute such purported facts in any other context.[3]

---

[3] Plaintiffs also offer numerous conclusions of law and/or characterizations of documents, which also require no response.

1. The Nation disputes that Parcel 2 is "located within western Glendale and entirely enclosed by Glendale's corporate limits." The Nation avers that Parcel 2 is one of several properties—some owned by the Nation and some owned by other parties—that together constitute a "county island" of unincorporated territory surrounded by land that has been incorporated by Glendale. AR7.

2. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 2.

3. The Nation disputes that "100 square miles of land are enclosed within Glendale's city limits" and avers that approximately 59 square miles are within the incorporated limits of the City of Glendale and that the remaining approximately 41 square miles are "county islands" of unincorporated territory surrounded by land that has been incorporated by Glendale. *See* Ariz. Rev. Stat. Ann. § 11-251.12 (defining "county island").

4. The Nation disputes that there is a "difference between the City's incorporated area and the area within its limits." The Nation does not dispute that the presence of unincorporated county islands surrounded by land incorporated by Glendale stems from a practice called "strip annexation."

5. Paragraph 5 consists of conclusions of law that require no response.

6. Paragraph 6 consists of conclusions of law that require no response.

7. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 7.

8. The Nation disputes that Parcel 2 is "fully encircled by incorporated Glendale land," and avers that Parcel 2 is one of several properties—some owned by the Nation and some owned by other parties—that together constitute a "county island" of unincorporated territory surrounded by land that has been incorporated by Glendale. AR7.

9. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 9.

10. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 10.

1     11.    Solely for the purpose of resolving these cross-motions for summary judgment,
2 the Nation does not dispute the statements contained in Paragraph 11.
3     12.    Solely for the purpose of resolving these cross-motions for summary judgment,
4 the Nation does not dispute the statements contained in Paragraph 12.
5     13.    Paragraph 13 consists of conclusions of law that require no response.
6     14.    Solely for the purpose of resolving these cross-motions for summary judgment,
7 the Nation does not dispute that Parcel 2 is zoned R-43.  The balance of Paragraph 14
8 characterizes Maricopa County Zoning Ordinance § 503.1, which speaks for itself.
9     15.    Solely for the purpose of resolving these cross-motions for summary judgment,
10 the Nation does not dispute the statements contained in Paragraph 15.
11    16.    Solely for the purpose of resolving these cross-motions for summary judgment,
12 the Nation does not dispute the statements contained in Paragraph 16.
13    17.    Solely for the purpose of resolving these cross-motions for summary judgment,
14 the Nation does not dispute the statements contained in Paragraph 17.
15    18.    Solely for the purpose of resolving these cross-motions for summary judgment,
16 the Nation does not dispute the statements contained in Paragraph 18.
17    19.    Solely for the purpose of resolving these cross-motions for summary judgment,
18 the Nation does not dispute the statements contained in Paragraph 19.
19    20.    Solely for the purpose of resolving these cross-motions for summary judgment,
20 the Nation does not dispute the statements contained in Paragraph 20.
21    21.    Solely for the purpose of resolving these cross-motions for summary judgment,
22 the Nation does not dispute the statements contained in Paragraph 21.
23    22.    The purported facts in Paragraph 22 are unsupported by citation to the
24 administrative record and are thus immaterial and require no response.  To the extent a
25 response is required, solely for the purpose of resolving these cross-motions for summary
26 judgment, the Nation does not dispute the statements contained in Paragraph 22.
27    23.    Undisputed.
28

24. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 24.

25. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 25.

26. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 26.

27. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 27.

28. Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 28.

29. Undisputed.

30. Paragraph 30 characterizes the Lands Replacement Act, which speaks for itself.  However, the Nation disputes that the Act's sole purpose was to provide the Nation with replacement lands, and that the Act authorizes the Nation to purchase only 9,880 acres of land.

31. Paragraph 31 characterizes the Lands Replacement Act, which speaks for itself.  However, the Nation disputes that the Lands Replacement Act's sole purpose was to replace the Nation's reservation lands.

32. Paragraph 32 characterizes the Lands Replacement Act, which speaks for itself.   However, the Nation disputes that the Act requires the Nation to "assemble a new reservation consisting of a few large tracts of land, none of which could be in a city."

33. Undisputed.

34. Undisputed.

35. The purported facts in Paragraph 35 are supported only by materials that are outside the administrative record and that Defendants have moved to strike.  They are thus immaterial and require no response.  To the extent a response is required, the Nation disputes the statements in Paragraph 35 and instead avers as follows:  In August 2002, the Nation's Legislative Council approved the purchase of approximately 2,600 acres of land that had

6

1   been part of the Painted Rock Springs Ranch using approximately $1 million in funds from
2   the Lands Replacement Act.  The purchase was made through a double-escrow transaction:
3   Arizona Desert Shrimp LLC purchased the property from the Painted Rock Springs Ranch,
4   and the Nation purchased the property from Arizona Desert Shrimp LLC with Lands
5   Replacement Act funds.  In September 2002, the Nation's Legislative Council approved the
6   use of $1,940,800 in Lands Replacement Act funds for the purchase of a 1,166-acre parcel at
7   the Painted Rock Springs Ranch that was contiguous to the 2,600-acre parcel.  This purchase
8   was also made through a double-escrow transaction.  Because the Painted Rock Springs
9   Ranch was willing to sell the 1,166-acre parcel only in conjunction with an adjoining 9,200-
10  acre parcel, Arizona Desert Shrimp LLC purchased the two parcels totaling 10,366 acres for
11  $1,950,000.  The Nation then purchased the 1,166-acre parcel from Arizona Desert Shrimp
12  LLC for approximately $1,940,800, using Lands Replacement Act funds.  Kimblewick Land
13  LLC, a subsidiary of Vi-ikam Doag Industries, a tribally chartered corporation, purchased
14  the 9,200-acre parcel from Arizona Desert Shrimp LLC for $9,200.  The Nation's Legislative
15  Council made clear that the two parcels would serve different purposes.  The 1,166-acre
16  parcel was to "be joined with the 2,600 acre parcel previously purchased to be held in trust
17  by the United States [under the Lands Replacement Act]."  The 9,200-acre parcel—which
18  was on the same flood plain that destroyed the Gila Bend Reservation—would "be held in
19  fee simple by Kimblewick Land L.L.C. for an indefinite period while plans for use or
20  disposition of the … parcel are developed."  Resolution of the Tohono O'odham Legislative
21  Council, No. 02-364 (Ex. A to Declaration of Merrill C. Godfrey).  The Nation disputes that
22  it purchased the parcels through Arizona Desert Shrimp LLC in "an attempt to avoid the Gila
23  Bend Act ceiling of 9,880 acres."  Rather, the Nation may use third-party buyers when
24  purchasing property under the Lands Replacement Act to avoid sellers' inflating prices due
25  to the Nation's settlement with the United States.  Indeed, when the Nation previously tried
26  to purchase property directly with Lands Replacement Act funds, a seller offered land for
27  approximately $3,000 per acre, even though it was valued at less than $1,000 per acre.
28  AR3504.

1         36.    Paragraph 36 consists of conclusions of law that require no response.

2         37.    Paragraph 37 consists of conclusions of law that require no response.

3         38.    Paragraph 38 consists of conclusions of law that require no response. However, the Nation disputes that the Department of the Interior "has affirmatively committed as a matter of department policy that when it decides to take land into trust for gaming, it must issue a decision regarding whether the land qualifies for one of the exceptions in 25 U.S.C. § 2719."

         39.    Paragraph 39 consists of conclusions of law that require no response. However, the Nation disputes that the Department of the Interior "has affirmatively committed as a matter of department policy that when it decides to take land into trust for gaming, it must issue a decision regarding whether the land qualifies for one of the exceptions in 25 U.S.C. § 2719."

         40.    The Nation does not dispute that gaming is an important public issue in Arizona. The balance of Paragraph 40 consists of conclusions of law that require no response.

         41.    Solely for the purpose of resolving these cross-motions for summary judgment, the Nation does not dispute the statements contained in Paragraph 41.

         42.    The Nation does not dispute that many Arizona tribes, including the Nation, supported Proposition 202. The Nation disputes the remainder of Paragraph 42 and avers that Proposition 202 incorporates the requirements of the Indian Gaming Regulatory Act ("IGRA"), including IGRA's exceptions permitting gaming on Indian land acquired after IGRA's effective date, *see* 25 U.S.C. § 2719; Ariz. Rev. Stat. Ann. § 5-601.02, and that the Nation never made any contrary representation.

         43.    Paragraph 43 quotes from a memorandum purporting to paraphrase statements made by Chairman Norris in opposition to a competing proposition on the ballot along with Proposition 202; the competing proposition would have permitted dog and horse racetracks—many of which are located in cities—to offer slot machines. AR2607; AR2389. The quoted memorandum speaks for itself. The Nation disputes the implication that

8

1  Chairman Norris represented that Proposition 202 would prevent any gaming in metropolitan
2  areas.

3        44.     Paragraph 44 consists of conclusions of law that require no response.

4        45.     Paragraph 45 consists of conclusions of law that require no response.

5        46.     Regarding the first sentence of Paragraph 46, the Nation does not dispute that
6  on August 21, 2003, its wholly-owned corporation—Rainier Resources, Inc.—purchased the
7  Settlement Property in unincorporated Maricopa County, Arizona.  The Nation disputes that
8  the Settlement Property is "in western Glendale" and avers that the Settlement Property is
9  one of several properties—some owned by the Nation and some owned by other
10 parties—that together constitute a "county island" of unincorporated territory surrounded by
11 land that has been incorporated by Glendale.  AR7.  The second sentence of Paragraph 46
12 characterizes a 2003 resolution by the Nation's governing council, which speaks for itself.
13 The third sentence of Paragraph 46 characterizes statements made by leaders of five Apache
14 and Yavapai tribes, which speak for themselves.  The Nation disputes that "the Nation's
15 fellow tribes" in general have made such statements, and disputes that the Nation has
16 violated any promises that it purportedly made to Arizona voters.

17       47.     Solely for the purpose of resolving these cross-motions for summary judgment,
18 the Nation does not dispute the statements contained in Paragraph 47.

19       48.     The Nation disputes that the Nation transferred ownership of Parcel 2 to itself
20 on January 20, 2009, and avers that Rainier Resources, Inc. transferred ownership of Parcel 2
21 to the Nation by deed dated January 20, 2009, and recorded January 28, 2009.  AR4366.
22 Solely for the purpose of resolving these cross-motions for summary judgment, the Nation
23 does not dispute the remaining statements contained in Paragraph 48.

24       49.     The Nation disputes that it has ever planned to build a casino "in the midst of
25 Glendale's neighborhoods" or that Chairman Norris "pushed Proposition 202 as a means to
26 keep gaming out of cities."  Solely for the purpose of resolving these cross-motions for
27 summary judgment, the Nation does not dispute the balance of the statements contained in
28 Paragraph 49.

1     50.     The Nation does not dispute that it filed a fee-to-trust application with the
2  Secretary for the Settlement Property.  The Nation disputes that it has ever sought the
3  Secretary's "permission" to develop a casino on the Settlement Property.  The Nation avers
4  that it did initially seek an advisory Indian lands opinion from the Secretary on whether it
5  could engage in gaming on the Settlement Property in compliance with IGRA, but it
6  subsequently withdrew that request.  AR2163-2164.
7     51.     Solely for the purpose of resolving these cross-motions for summary judgment,
8  the Nation does not dispute the statements contained in Paragraph 51.
9     52.     Solely for the purpose of resolving these cross-motions for summary judgment,
10 the Nation does not dispute the statements contained in Paragraph 52.
11    53.     Solely for the purpose of resolving these cross-motions for summary judgment,
12 the Nation does not dispute the statements contained in Paragraph 53.
13    54.     The Nation disputes that it seeks to build a casino "in Glendale."  The Nation
14 avers that Parcel 2 is in unincorporated Maricopa County, Arizona.  AR7.  The Nation
15 further disputes that its nearest property lies more than 60 miles away from Glendale, and
16 avers that San Lucy Village is approximately 48 miles from Parcel 2.  AR4165.  Solely for
17 the purpose of resolving these cross-motions for summary judgment, the Nation does not
18 dispute the remaining statements contained in Paragraph 54.
19    55.     The Nation disputes that it "own[s] property within City limits."  The Nation
20 avers that Parcel 2 is in unincorporated Maricopa County, Arizona.  AR7.  The Nation
21 further disputes that its plans raise "development issues ranging from road expansion to
22 public safety coordination to water service."  Solely for the purpose of resolving these cross-
23 motions for summary judgment, the Nation does not dispute the balance of the statements
24 contained in Paragraph 55.
25    56.     The Nation disputes that Senators McCain and Kyl have "urged the Secretary
26 to reject the Nation's application."  The administrative record does not reflect any such
27 opposition.  Solely for the purpose of resolving these cross-motions for summary judgment,
28 the Nation does not dispute the balance of the statements contained in Paragraph 56.

1          57.     Paragraph 57 characterizes Glendale's filings with the Department, which
2   speak for themselves, and/or consists of conclusions of law that require no response.
3   However, the Nation disputes that Parcel 2 is "within the corporate limits of a[] city or
4   town."
5          58.     Paragraph 58 characterizes Glendale's filings with the Department, which
6   speak for themselves.  However, the Nation disputes that Parcel 2 is more than 60 miles from
7   San Lucy Village and avers that it is approximately 48 miles from San Lucy Village.
8   AR4165.
9          59.     Paragraph 59 is unsupported by citation to the administrative record and
10  requires no response.  To the extent a response is required, the Nation disputes that "the
11  Nation's reservation and casino would harm the City," and avers that the Nation's planned
12  development would provide jobs and bolster the local economy.  AR2282; AR3436.
13         60.     The Nation disputes the statements in Paragraph 60 and avers that the Nation's
14  planned development would not harm Glendale, but would provide jobs and bolster the local
15  economy.  AR2282; AR3436.
16         61.     The Nation disputes the statements contained in Paragraph 61 and avers that
17  Parcel 2 "receives no regular services from" Glendale and that its development will not have
18  the effect on land use planning that Glendale alleges.  AR7.
19         62.     Having had no opportunity to test the declarations of Ed Beasley, Michael
20  Socaciu, and Gary Hirsch through discovery, the Nation disputes the statements contained in
21  Paragraph 62.
22         63.     Solely for the purpose of resolving these cross-motions for summary judgment,
23  the Nation does not dispute the statements contained in the first two sentences of Paragraph
24  63.  The Nation disputes the statements in the third and fourth sentences of Paragraph 63 and
25  avers that developing a casino and resort on the Settlement Property would provide new jobs
26  and business opportunities in the West Valley, and therefore Glendale can be expected to
27  "bolster [its] tax base."  AR3436.
28

1     64.     The statements in the first sentence of Paragraph 64 are unsupported by
2 citation to any materials and thus require no response.  To the extent a response is required,
3 the Nation disputes those statements and avers that developing a casino and resort on the
4 Settlement Property would provide new jobs and business opportunities in the West Valley,
5 and therefore Glendale can be expected to "bolster [its] tax base."  AR3436.  Solely for the
6 purpose of resolving these cross-motions for summary judgment, the Nation does not dispute
7 the statements in the remainder of Paragraph 64.

8     65.     Solely for the purpose of resolving these cross-motions for summary judgment,
9 the Nation does not dispute the statements contained in Paragraph 65.

10     66.     The Nation disputes the statements in Paragraph 66 and avers that if a casino
11 and resort were built on the Settlement Property, they would boost the economy in the West
12 Valley (including Glendale).  As the Mayor of Peoria has noted, the casino and resort would
13 be "a stimulus package for the West Valley."  AR2282.  It would create nearly 10,000 jobs
14 and provide new business opportunities for local suppliers.  AR3436.  And unlike the sports
15 facilities in the area, which are used only seasonally, the Nation's facilities would "bring in a
16 lot of people on a year-round basis."  AR2282.  Consequently, "this new venture will have
17 the same economic impact as having a Super Bowl in the West Valley every two years."
18 AR3436.

19     67.     The Nation disputes the statements in Paragraph 67 and avers that because the
20 planned casino and resort would spur the local economy, local governments, including
21 Glendale, "will bolster their tax base."  AR3436.

22     68.     The Nation disputes that developing a casino and resort in the West Valley
23 would have "adverse social consequences" or "frustrate[] community relationships."  Area
24 leaders have pledged their support for the Nation's plans and have acknowledged that the
25 Nation has made strenuous efforts to build ties to the West Valley community.  As the
26 Mayor of Peoria has noted, the Nation has "repeatedly reached out" to local stakeholders,
27 including municipalities, businesses, schools, and "many others."  AR3012.  The Nation has
28 made a "careful examination" of "the needs of the West Valley and the eventual impact of [a

12

1  casino and resort] facility to area governments, residents, businesses and tribal members."
2  AR3436.  It also plans to invest in the West Valley community, by supporting local
3  businesses, charities, and governments.  *Id.*  As a result, the Nation's plans have won support
4  from a wide coalition of businesses, non-profits, trade associations, and politicians.
5  AR3229-3231.  Most notably, there is strong public support for the Nation's plans.
6  According to a poll of West Valley residents, nearly 75 percent of people look favorably on
7  the Nation's proposal to develop a casino and resort facility.  AR2284.  Solely for the
8  purpose of resolving these cross-motions for summary judgment, the Nation does not dispute
9  the balance of the statements contained in Paragraph 68.

10        69.    Solely for the purpose of resolving these cross-motions for summary judgment,
11  the Nation does not dispute the statements contained in Paragraph 69.

12        70.    The Nation does not dispute that when it filed its trust application in January
13  2009, it asked the Secretary to take the entire Settlement Property into trust and to provide an
14  "Indian lands opinion" for the property.  The Nation disputes that "[b]oth those aspects …
15  subsequently changed."

16        71.    Solely for the purpose of resolving these cross-motions for summary judgment,
17  the Nation does not dispute the statements contained in Paragraph 71.

18        72.    The Nation does not dispute that on June 23, 2009, Glendale passed an
19  ordinance asserting that it had annexed a portion of the Settlement Property, relying on a
20  previous annexation attempt initiated in 2001 and abandoned in 2002.  The Nation disputes
21  that any portion of its property was incorporated into Glendale as a result of the abandoned
22  2001 annexation attempt.

23        73.    Undisputed.

24        74.    The Nation does not dispute that on August 18, 2009, it asked the Secretary to
25  accept trust title to Parcel 2 immediately and defer the remainder of the Nation's trust
26  application pending the resolution of the state-court litigation and that on September 8, 2009,
27  it asked the Secretary to take the entire Settlement Property into trust.  The Nation disputes
28

1  that it has ever "amended its trust application" or that its September 8, 2009 letter reflected a
2  change in its position.  *See* AR506.
3        75.    The Nation does not dispute that on March 12, 2010, it asked the Secretary to
4  immediately accept trust title to Parcel 2.  The Nation avers that—as its counsel explained in
5  a letter to the Department of the Interior on March 19, 2010—it has never "abandon[ed] the
6  remainder of its application," but has instead asked "in the interest of expedition, that the
7  Department hold the remainder of the application in abeyance until the state-court litigation
8  affecting portions of the Settlement Property other than Parcel 2 is resolved."  AR506.
9        76.    Undisputed.
10       77.    The Nation disputes that the Assistant Secretary decided to accept Parcel 2 into
11 trust solely "to moot" the Nation's lawsuit against the Department.  The remainder of
12 Paragraph 77 consists of characterizations of the June 21, 2010 transcript of the hearing
13 before Judge John D. Bates in *Tohono O'odham Nation v. Salazar*, No. 1:10-cv-472-JDB
14 (D.D.C.), Judge Bates's June 22, 2010 minute order, and the Secretary's July 23, 2010
15 decision and status report, which speak for themselves.
16       78.    The Nation disputes that the Secretary's decision and the administrative record
17 reflect a lack of consideration of the acreage limit in § 6(c) of the Lands Replacement Act
18 and avers that the Department correctly interpreted § 6(c) as placing a 9,880-acre limit on the
19 amount of land that the Nation may have *placed into trust* and that the Department
20 concluded that the Nation has complied with this requirement because only 3,200 acres of
21 land have been placed in trust pursuant to the Act.  AR4306-4308.
22       79.    Paragraph 79 characterizes the Secretary's decision, which speaks for itself.
23 However, the Nation disputes that the Secretary made any determination that Parcel 2 is
24 within the "city limits"—as opposed to "within the corporate limits"—of the City of
25 Glendale.
26       80.    The Nation disputes that the Department has ever had an "established policy of
27 issuing an IGRA determination before approving" a mandatory trust acquisition.  The
28 remainder of Paragraph 80 characterizes the Secretary's decision, which speaks for itself.

14

1    81. The Nation disputes the statements in Paragraph 81. The Department of the
2 Interior did not—and could not—have "treated the Nation's application as a gaming
3 acquisition." The Lands Replacement Act requires the Secretary to accept trust title to land
4 meeting the Act's requirements. Pub. L. No. 99-503, § 6(d). It thus gives the Secretary no
5 discretion to consider the proposed use of land, for gaming or otherwise, when determining
6 whether to take it into trust under the Act. Consequently, the Secretary's final decision
7 "d[id] not address or determine the Nation's eligibility to game on Parcel 2 under IGRA."
8 AR10. Although the Nation initially sought an Indian lands opinion for the Settlement
9 Property, it withdrew the request well before the Secretary's final decision. AR2163-2164.
10 And the Secretary's decision acknowledged that the Nation was not seeking an Indian lands
11 opinion. AR10.

12    82. The Nation disputes the statements in Paragraph 82. As explained above in
13 Paragraph 81, the Department did not treat the Nation's application as a gaming acquisition.

14    83. The Nation disputes the statements in Paragraph 83. As explained above in
15 Paragraph 81, the Department did not treat the Nation's application as a gaming acquisition.

16    84. Undisputed.

17    85. Solely for the purpose of resolving these cross-motions for summary judgment,
18 the Nation does not dispute the statements contained in the first sentence of Paragraph 85.
19 The second sentence of Paragraph 85 characterizes Governor Brewer's September 24, 2010
20 letter to Secretary Salazar, which speaks for itself.

15

Dated:  December 31, 2010			Respectfully submitted,


			/s/ Danielle Spinelli
			Jonathan Jantzen,
			   Attorney General, SBN 016220
			Samuel Daughety,
			   Assistant Attorney General, SBN 023170
			Office of Attorney General
			TOHONO O'ODHAM NATION
			P.O. Box 830
			Sells, AZ  85634
			Telephone: (520) 383-3410
			jonathan.jantzen@tonation-nsn.gov
			samuel.daughety@tonation-nsn.gov


			Seth P. Waxman (*Pro hac vice*)
			Danielle Spinelli (*Pro hac vice*)
			Brian H. Fletcher (*Pro hac vice*)
			WILMER CUTLER PICKERING
			   HALE AND DORR LLP
			1875 Pennsylvania Avenue, N.W.
			Washington, D.C.  20006
			Telephone:  (202) 663-6000
			seth.waxman@wilmerhale.com
			danielle.spinelli@wilmerhale.com
			brian.fletcher@wilmerhale.com

			*Counsel for Defendant-Intervenor*
			*Tohono O'odham Nation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of December, 2010, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, which will send a notice of filing to all counsel of record.

*/s/   Danielle Spinelli*
Danielle Spinelli